Judge Leighton

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DONATO VALLE VEGA,<br><br>Defendant. | NO. CV15-5792RBL<br><br>FINDINGS OF FACT AND<br>CONCLUSIONS OF LAW |

THIS MATTER having come before this Court on March 8, 2018, and the Court having heard the testimony of the witnesses presented by the parties, having reviewed the exhibits, briefing and record, and having heard argument of counsel

NOW, THEREFORE, the Court makes the following

## I.  FINDINGS OF FACT

1. The Petitioner has had five attorneys to date: Colin Fieman, from September 23, 2010 to July 14, 2011; Roger Hunko, from July 14, 2011, to April 19, 2012; Bob Leen, from April 4, 2012 to March 1, 2013; Brooks Holland, March 2013 to December 24, 2015; Tim Lohraff to present. Dkt (CR10-5629)

A. **Attorney Robert Leen's education and experience**

2. Robert Leen received his J.D. from the University of Georgia in 1973. Habeas Tr. at 84.

3. Mr. Leen work as an assistant state attorney for the 11th Judicial Circuit in Miami, Dade County, Florida from 1974 to 1976. Habeas Tr. at 84.

4. Since that time, Mr. Leen has been in private practice in Broward County, Florida and the Western District of Washington. Habeas Tr. at 84.

5. From 1976 to 1986, Mr. Leen handled state criminal defense and some divorce work and a smattering of other types of cases. Habeas Tr. at 84.

6. From 1986 to the early 1990s, Mr. Leen handled state criminal defense in the State of Washington. Habeas Tr. at 84.

7. From the early 1990s until 2015, Mr. Leen did mostly federal criminal defense. Habeas Tr. at 84.

8. At the time Mr. Leen accepted Mr. Valle's case, Mr. Leen had been an attorney for about 30 years and had defended cases in federal court for about 20 years. Habeas Tr. at 85.

B. **Mr. Leen's work on Petitioner's case.**

9. Mr. Leen took the case over from Attorney Roger Hunko in April 2012 when Mr. Hunko withdrew. Habeas Tr. at 85-86.

10. Mr. Leen's practice when getting every new case, was to review the docket on-line, and to review and print a copy of the indictment, the complaints, and any motions. Habeas Tr. at 86.

11. Mr. Leen would review the discovery and then go to visit the defendant at the Federal Detention Center. Habeas Tr. at 86.

12. Mr. Leen received a set of discovery from both Mr. Hunko and the U.S. Attorney's Office. Habeas Tr. at 87.

13. Mr. Leen recalled receiving voluminous discovery from the government. Habeas Tr. at 87.

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

14. The government had already provided Mr. Hunko access to the Petitioner's FBI CHS file around November 2011, so copies of documents from FBI CHS file were included in the packet that Mr. Leen received. Habeas Tr. at 88; Government's Exhibit 2, Habeas Hearing.

15. Mr. Leen also looked at the Petitioner's FBI CHS file and he marked the pages that he wanted copies of in the file. Habeas Tr. at 89.

16. The government provided those copies to Mr. Leen. Habeas Tr. at 89.

17. Mr. Leen did not independently recall the discovery conference in the case but he remembered that it was the practice of the Tacoma Branch U.S. Attorney's Office to have discovery conferences at the Tacoma DEA. Habeas Tr. at 90.

18. Mr. Leen visited Petitioner on a regular basis; he usually visited his clients at once every week to ten days. Habeas Tr. at 91.

19. Mr. Leen filed motions to suppress Petitioner's statement to law enforcement agents and to suppress the large amount of drugs seized from the defendant. Habeas Tr. at 91.

**C. Petitioner's Issue One**

20. Mr. Leen reviewed the Petitioner FBI CHS informant file and made copies of whatever he felt was pertinent to Petitioner's public authority defense. Habeas Tr. at 92-93.

21. Mr. Leen discussed the public authority defense and duress with Petitioner. Habeas Tr. at 93.

22. Petitioner grew more upset as the case got closer to trial. Habeas Tr. at 92.

23. Mr. Leen filed a motion to withdraw. Habeas Tr. at 92

24. The Court held a hearing and found that the attorney-client relationship was not irretrievably broken and denied the motion. Habeas Tr. at 92.

**D. Petitioner's Issues 2-3**

25. Mr. Leen offered in evidence at trial defense exhibit 101, which contains Petitioner's FBI CHS admonishments. Habeas Tr. at 94; Defendant's trial exhibit 101.

26. Mr. Leen cross examined the case agent about this form at trial to try to establish Petitioner's public authority defense. Habeas Tr. at 94.

27. Mr. Leen also offered in evidence defense trial exhibit 103, which was an FBI internal request for authorization to allow Petitioner to attend cock fights if invited. Habeas Tr. at 96; Defendant's trial exhibit 103.

28. The case agent did not tell Petitioner that he had requested permission to allow Petitioner to attend cock fights and Petitioner did not attend any cock fights as an informant for the FBI.

29. Mr. Leen asked a federally certified interpreter, Glenna White, to translate the Petitioner's statement, which Petitioner had given in Spanish. Habeas Tr. at 97.

30. The government agreed to using the Petitioner's translation instead of the government's translation. Habeas Tr. at 97.

31. Mr. Leen moved to suppress this statement. Habeas Tr. at 98.

32. Mr. Leen cross examined the agents about the circumstances of how the statement was obtained. Habeas Tr. at 98.

**E. Petitioner's Issue Four**

33. Mr. Leen learned about the pole camera and tracker from discovery from the government. Habeas Tr. at 98.

34. Mr. Leen typically asked if the government intended to offer film from the pole camera which Mr. Leen knew would take tens or dozens of hours to review. Habeas Tr. at 98.

35. Since the government was not offering the pole camera film at trial, Mr. Leen did not pursue anything further with respect to the pole camera evidence. Habeas Tr. at 98.

36. Mr. Leen was aware of the tracking device and did not feel it was necessary to file motions regarding the tracking device. Habeas Tr. at 99.

37. Mr. Leen was aware that at the time 9th Circuit law allowed police to place trackers on a car without a court order. Habeas Tr. at 99.

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

38. Mr. Leen recalled subpoenaing Officer Danny Valadez from Arizona to testify. Habeas Tr. at 99.

39. The government agreed to produce Officer Valadez for the Petitioner to call him as a witness. Habeas Tr. at 99.

40. Mr. Leen questioned Officer Valadez about the tracker warrant and offered the tracker (search) warrant in evidence. Defendant's exhibits 168A & B.

**F. Petitioner's Issue Five**

41. Mr. Leen cross examined Special Agent Britton Boyd about Petitioner parole visa and his travel to Mexico because this was a benefit that Petitioner received as an informant. Habeas Tr. at 100.

42. Mr. Leen included on his exhibit list confidential human source reporting documents 108-141, FBI 302s 142-147, DEA 6s 154-159, and ATF reports 162-163, and Phoenix PD surveillance reports 162 and 163. Habeas Tr. at 101. Dkt 129 (Defense Exhibit List).

43. Mr. Leen made copies of the police reports and marked them as defense exhibits for two reasons: as they might be relevant at trial and Mr. Leen wanted to give copies of the police reports to Petitioner.

44. Mr. Leen moved to suppress the Petitioner's statement to the agents and therefore necessarily raised the issue as to whether Petitioner was in custody and advised of his Miranda Rights. Habeas Tr. at 101-102.

**G. Petitioner's Issue Six**

45. Mr. Leen determined that the defense of entrapment by estoppel was not applicable because Petitioner did not indicate that he was misled by agents. Habeas Tr. at 102.

46. Instead, Mr. Leen argued petitioner's defense of public authority and attempted to get a duress instruction. Habeas Tr. at 102.

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

## H. Petitioner's Issue Seven

47. Mr. Leen did not recall any specific statements or characterizations in the government's opening statement that seemed improper. Habeas Tr. at 103.

48. Mr. Leen indicated that he is reticent to make objections during opening and closing statements unless a statement is pretty clearly wrong. Habeas Tr. at 103.

49. Mr. Leen stated in trial that Petitioner was authorized to engage in behavior that would be illegal but for the fact that he was working for the FBI. Habeas Tr. at 103.

50. Mr. Leen mentioned this because Petitioner was caught with a large stash of cocaine and methamphetamine. Habeas Tr. at 104.

51. Mr. Leen made this statement in support of Petitioner's public authority defense.

52. Mr. Leen agreed to a stipulation that the government could mention the firearms that Petitioner possessed but would not offer photos of them; Mr. Leen reasoned that the firearms might appear a little bit sinister if the jury viewed them in photos and also that the Petitioner was not even supposed to possess firearms as an informant. Habeas Tr. at 104-105.

53. Mr. Leen believe this stipulation was favorable to the Petitioner. Habeas Tr. at 105.

## I. Petitioner's Issue 8

54. . Mr. Leen objected to the jury selection procedures including the manner of selecting the alternate jurors and not getting an additional peremptory challenge for the alternate. Habeas Tr. at 105.

55. Mr. Leen also objected to the blind, simultaneous exercise of peremptory challenges. RT 91.

56. . Mr. Leen is certain he would have consulted with the Petitioner about any possible challenges for cause. Habeas Tr. at 107.

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

57. There was no evidence in the record that any of the jurors on the panel were biased.

58. Mr. Leen indicates that if there had been anything unusual regarding juror knowledge of Officer Stringfellow, he would have objected. Habeas Tr. at 108.

**J. Petitioner's Issue Nine**

59. Mr. Leen recalled making objections to the calculations in the presentence report and the record reflects that as well. Habeas Tr. at 108; PSR.

60. Mr. Leen noted that there were more than enough quantities of seized drugs to support the mandatory minimum sentences that the Court imposed. Habeas Tr. at 108.

61. Mr. Leen objected to the two level gun enhancement. Habeas Tr. at 109.

**K. Professor Brooks Holland's education and experience.**

62. Petitioner's Appellate Lawyer Brooks Holland graduated from Boston University School of Law in 1994. Habeas Tr. at 8-9.

63. After graduation, Mr. Holland and worked as a public defender in the Bronx with the Legal Aid Society of New York for four year. Habeas Tr. at 9.

64. Mr. Holland then worked for over seven years as a public defender at the New York County Defenders Services in Manhattan. Habeas Tr. at 9.

65. During his time as a public defender, Mr. Holland handled misdemeanor and felony cases, including serious felonies involving charges of murder, sex crimes, drug cases, and persistent felony offender cases. Habeas Tr. at 10.

66. In the fall of 2005, Mr. Holland took a position teaching law at Gonzaga University. Habeas Tr. at 9.

67. In 2007, Mr. Holland joined the CJA panel for the Court of Appeals for the Ninth Circuit and began handling federal appellate cases. Habeas Tr. at 9.

68. Mr. Holland has been doing federal appellate work since 2007. Habeas Tr. at 9.

69. On average, Mr. Holland handles about one 9th Circuit appeal a year. Habeas Tr. at 10.

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

70. Mr. Holland had been an attorney for nearly 20 years when he accepted Petitioner's case. Habeas Tr. at 12.

**L. Mr. Holland's work on Petitioner's case.**

71. Mr. Holland had adequate time to focus on Petitioner's case. Habeas Tr. at 11.

72. When Mr. Holland received Petitioner's case, Mr. Holland conducted a holistic review of the district court record to familiarize himself with the charges and primary issues in the case, the motion practice, the trial, and the sentencing proceedings. Habeas Tr. at 12-13, 17.

73. Mr. Holland reached out to Petitioner early in the case to get Petitioner's perspective on the case. Habeas Tr. at 13-14, 17.

74. Mr. Holland communicated with Petitioner by letter, email, and by telephone. Habeas Tr. at 14.

75. Mr. Holland had a detailed conversation with trial counsel, Mr. Robert Leen, early in the case. Habeas Tr. at 14-15.

76. Mr. Leen highlighted different issues for Mr. Holland such as jury instructions, the duress charge, and other parts of the case that helped Mr. Holland direct his attention more efficiently to the issues in the transcripts. Habeas Tr. at 15.

77. When deciding on which issues to appeal, Mr. Holland took a holistic approach.

    a. Mr. Holland considered what he had learned from a thorough review of the district court record and transcripts;

    b. Mr. Holland considered input from trial counsel and his client, the Petitioner;

    c. Mr. Holland conducted legal research regarding possible appellate issues;

    d. Mr. Holland exercised his own professional and independent judgment to decide on which issues should be argued. Habeas Tr. at 15-16.

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

78. Mr. Holland argued four issues on appeal:

    a. That the District Court erred by finding that Petitioner had consented to the search of his property;

    b. That the District Court erred during jury selection, violating Federal Criminal Rule of Procedure 24(c) by employing a blind lottery to select the alternate jurors at the close of the case, and by not giving Petitioner an additional peremptory challenge for use against alternate jurors;

    c. That the District Court erred by not instructing the jury on the defense of duress;

    d. That the District Court failed to make adequate findings to justify Petitioner's sentence. *See U.S. v. Donato Valle* (9th Cir. No. 13-30059), Dkt. 12-1 at 35, 41, 45, & 51.

79. Mr. Holland is careful not to dilute his stronger appellate issues by also arguing weaker issues and Mr. Holland is familiar with the 9th Circuit's appellate rules on word limits. Habeas Tr. at 16-17.

80. Mr. Holland filed a reply brief to the Plaintiff-Appellee's brief. Habeas Tr. at 18-19.

81. Mr. Holland studied the Plaintiff-Appellee's Answering Brief and his Reply Brief to sharpen his mind to the most contested issues in the case. Habeas Tr. at 19.

82. Mr. Holland reviewed the record and transcripts again to prepare for oral argument. Habeas Tr. at 20.

83. Mr. Holland scheduled a moot court with students on the moot court team; they spent over an hour practicing oral arguments over and over again. Habeas Tr. at 20-21.

M. **Petitioner's Issues 10-11 & 13.**

84. The government provided the Petitioner with defense exhibits 101 and 103 from the Petitioner's FBI informant file as discovery. *See* bate stamps on exhibits 101 (01998-02002) and 103 (02008-02017).

FINDINGS OF FACTS AND CONCLUSIONS OF LAW - 9

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

85. Mr. Holland reviewed the transcripts of the pretrial suppression hearing and trial very carefully and he included an extensive narrative from them in his appellate briefing. Habeas Tr. at 23.

86. Mr. Holland studied the government's opening and closing statements and found no instance of prosecutor misconduct nor was there an objection based on a viable allegation of prosecutor misconduct. Habeas Tr. at 24-25, 75.

87. There was no instance of prosecutor misconduct in the government's opening and closing statements. Habeas Tr. at 24-25, 75. *See* RT 17, RT 708-728.

88. Mr. Holland was aware that authentication and chain of custody are discretionary judgments by the district court, particularly in this case in which Petitioner' trial counsel offered the evidence, defense exhibits 101 and 103. Habeas Tr. at 25-26; RT 379-385.

**N. Petitioner's Issue 12.**

89. Mr. Holland challenged the consent to search on appeal. Habeas Tr. at 27.

90. Mr. Holland reasoned that Petitioner might stand a better chance on appeal by framing the search issue as a consent issue rather than simply attacking the District Court's factual finding that the agents had advised the Petitioner of his Miranda rights. Habeas Tr. at 27.

91. Mr. Holland did not ignore the agents' trial testimony on appeal. Habeas Tr. at 28.

92. Mr. Holland discussed the agents' suppression hearing testimony on appeal in order to articulate the consent issue. Habeas Tr. at 28.

93. Mr. Holland discussed the agents' trial testimony in the fact section of his brief. Habeas Tr. at 28; *See U.S. v. Donato Valle* (9th Cir. No. 13-30059), Dkt. 12-1 at 14-20.

**O. Petitioner's Issue 14**

94. Mr. Holland learned from reaching out to Mr. Leen that Mr. Leen had objected to the jury selection process. Habeas Tr. at 30.

95. Mr. Holland very carefully reviewed the transcripts of the voir dire. Habeas Tr. at 30.

96. Mr. Holland decided to attack the jury selection on appeal. Habeas Tr. at 30.

97. Mr. Holland scoured the voir dire record to try to find evidence to support a jury bias claim. Habeas Tr. at 31.

98. With the assistance of the Assistant U.S. Attorney, Mr. Holland was able to procure a copy of the peremptory challenge sheet, which Mr. Holland included as part of his record on appeal. Habeas Tr. at 31-32.

99. This document allowed Mr. Holland to develop a claim of prejudice, that if Mr. Valle had that additional peremptory challenge for the alternate, he would have used it. Habeas Tr. at 32.

100. Mr. Holland learned, however, that there was no evidence of juror bias in the record. Habeas Tr. at 31.

P. **Petitioner's Issue 15.**

101. Mr. Holland did not raise an issue of entrapment by estoppel issue on appeal because no such jury instruction was requested at the trial court level. Habeas Tr. at 32.

102. Mr. Holland reasoned that it would have been difficult to get the 9th Circuit Court of Appeals to reverse because the District Court did not sua sponte instruct the jury on a defense that the defendant had not requested. Habeas Tr. at 32.

103. Mr. Holland concluded that the record did not support such a defense claim. Habeas Tr. at 32.

104. Mr. Holland found nothing in the record to show that Petitioner's actions were the product of improper inducement or outrageous conduct by the government. Habeas Tr. at 33.

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

### Q. Petitioner's Issue 16

105. Mr. Holland spoke extensively with Petitioner about sentencing. Habeas Tr. at 35.

106. Mr. Holland noted that the issues Petitioner raised were mooted by the fact that the District Court essentially halved the guideline sentence by sentencing Petitioner to mandatory minimum on each charge to run consecutive. Habeas Tr. at 36-37.

107. Mr. Holland asked the Court of Appeals to remand the case so the District Court could make additional findings as to the reason for the sentence. Habeas Tr. at 37.

108. Mr. Holland reasoned that if the Court of Appeals did remand, the other issues raised by the Petitioner could be "fleshed out . . ."

### R. Petitioner's Issue 17-19.

109. Both Mr. Hunko and Mr. Leen reviewed the Confidential Source File (CHS) and tabbed pages that they wanted copied. Habeas Tr. at 24 (SA Boyd's testimony), at 88-89 (Mr. Leen's testimony); Government's Ex. 2 for habeas hearing.

110. Throughout this case, the CHS file information remained the same, however its format changed as the system was updated. Habeas Tr. at 24 (SA Boyd's testimony).

111. Under cross examination, Mr. Leen noticed that defense trial exhibit 102 and Petitioner's habeas exhibit 181 in places had different formatting but contained the same information. Habeas Tr. at 130-132.

112. What Petitioner terms as "the newly produced CHS file of Mr. Vega" is not newly produced as both Mr. Hunko and Mr. Leen were given access to the entire CHS file. *See* Habeas Tr. . 92-93, 120 (Mr. Leen's testimony).

113. Further, Mr. Leen made extensive use of CHS file to cross examine the government's witnesses at trial, *See* Dkt. 145 (CR10-5629RBL).

114. Mr. Leen marked for trial about 40 exhibits from the CHS file, 101-141, many of which he used to cross examine the Agents Jewell and Boyd in support of the Petitioner's Public Authority defense. *See* RT 259-440.

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

115. Three different attorneys looked at the CHS file, Mr. Hunko, Mr. Leen, and Mr. Lohraff and each of them focused on different documents.

116. This does not mean that any of the Petitioner's attorneys who viewed the file was ineffective, it just means they decided to copy different portions of the file.

117. When agents caught the Petitioner with the methamphetamine and cocaine, Petitioner told SA Boyd that he (Petitioner) had asked for the drugs to make some money because he was going through an extremely hard time financially; he said two of his businesses had failed and he needed money; he had a wife and two kids and his girlfriend had a new baby. *See* RT 345.

118. At the habeas hearing, Petitioner used his own handpicked portions of the CHS file to question SA Jewell, yet SA Jewell did not change his testimony from the trial that Petitioner was not useful to the DEA.

119. At the habeas hearing, SA Jewell reiterated that Petitioner was not being truthful to law enforcement; Petitioner appeared to be bragging about the Apodacas and Petitioner was involved in drug trafficking and committing crimes. *See* Habeas Tr. at 28, 31.

120. Petitioner's claims that Agent Jewell lied are not credible.

121. On Petitioner's motion, the Court admitted approximately 21 of the CHS exhibits at trial. *See* Dkt. 145.

122. The jury did not accept the Petitioner's Public Authority defense.

123. Britton Boyd's affidavits of January 25, 2013 and May 13, 2015 in support of extradition were signed well after the Petitioner's trial was over. *See* Dkts. 66-2 and 66-4 (15-cv-05792).

124. The affidavits offered no new information about the Petitioner beyond what had already been provided to Petitioner in discovery. *See id.*

125. SA Boyd explained during cross-examination by Mr. Lohraff that the words "late August" in paragraph 8 of his affidavit of January 25, 2013 in support of a

FINDINGS OF FACTS AND CONCLUSIONS OF LAW - 13

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

request for extradition should have said "early August" in reference to when authorities saw the brown Impala at Petitioner's car lot. Habeas tr. at 17 (SA Boyd's testimony).

126. The above misstatement does amount to perjury as Petitioner suggests.

127. The affidavits contained no exculpatory information. *See id.*

128. In convicting the Petitioner as charged, the jury showed that they believed the agents' version of what happened in the case, rather than the Petitioner's version.

129. Agent Boyd and Agent Jewell did not commit perjury when they testified that they gave admonishments to the Petitioner, nor when they testified that the Petitioner had engaged in illegal activity before September 2, 2010, nor when they testified about the Petitioner's travels to Mexico, and nor did SA Boyd commit perjury when he testified about his training and experience and knowledge.

130. SA Boyd did not commit perjury in his extradition affidavits nor in the trial.

131. SA Boyd's use of boilerplate language in his extradition affidavits is common among law enforcement officers and is not misleading or perjury.

132. SA Boyd's use of the term "unidentified man" in his extradition affidavit is not a false statement, rather it is meant to protect the identity of the caller.

133. The extradition affidavits of Andrea Goldbarg, Deputy Chief of the Narcotic and Dangerous Drug Section, signed on October 9, 2012 and January 30, 2013, likewise contained no new information beyond what had already been provided to Petitioner as discovery and contained no exculpatory information relating to Petitioner. *See* Dkt. 66-7 & 66-8 (15-cv-05792RBL).

134. Petitioner refers to Ms. Goldbarg's affidavit of October 12, 2012 as "Affidavit of Cooperating Witness/Defendant in Support of Government's Request for Extradition From Mexico of Agustin Flores Apodaca dated October 3, 2010," Exhibit 7, however Ms. Goldbarg was not a cooperating witness nor a defendant, but rather was an attorney for the Narcotic and Dangerous Drug Section, who submitted the affidavit as part of a United States' extradition request to Mexico. *See* Dkt. 66-7 & 66-8 (15-cv-05792RBL); See Dkt. 126 (CR10-5629RBL).

135. Mr. Leen testified at the habeas hearing that the government gave him access to "pretty voluminous discovery." Habeas Tr. at 87 (Mr. Leen's testimony).

136. Mr. Leen marked summary translations of the calls Petitioner made as a potential exhibit for Petitioner's trial. Dkt. 145 (CR10-5629RBL), Defense Ex. 148.

137. Mr. Leen marked SA Boyd grand jury testimony in the Apodaca case as a trial exhibit. Dkt. 154, Defense Ex. 153.

138. The government provided Mr. Leen SA Boyd's testimony from the Apodaca case as it related to Petitioner. *See* Defense Ex. 153, bearing the government's bate stamp 01818.

139. Mr. Leen cross examined SA Jewell at trial about the grand jury proceeding regarding the Apodacas. TR 316; Dkt 187, p. 27 of 162 (CR10-5629RBL).

140. FBI SA Dean Giboney was not a witness in Petitioner's trial.

141. SA Giboney's October 4, 2012 affidavit in support of extradition contains no new information beyond what had already been provided to Petitioner as discovery and contained no exculpatory information relating to Petitioner. *See* Dkt. 66-6 (15-cv-5792RBL).

## II. PROPOSED CONCLUSIONS OF LAW

1. Based on the entire record in this case, there is no credible evidence of ineffective assistance of counsel. The petitioner received effective assistance of counsel from both his trial counsel and his appellate counsel.

2. Petitioner has failed to show that his attorneys' representation fell below an objective standard of reasonableness. Nor has Petitioner shown that his attorneys' alleged deficient performance prejudiced Petitioner. Further, there is no credible evidence to support Petitioner's claim that Petitioner had a broken attorney-client relationship with his trial counsel.

3. Petitioner has failed to show that the government committed discovery violations under *Brady v. Maryland*, 373 U.S. 83 (1963). There is no credible evidence

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1. that the government suppressed evidence favorable to the Petitioner nor that the government suppressed evidence that was material to the Petitioner's guilt or sentence. Considering the entire record, Petitioner's claims are not credible and they do not create a reasonable doubt that did not otherwise exist. There is no reasonable probability that if the alleged withheld evidence had been disclosed to the Petitioner, the result in the proceeding would have been different. Petitioner has failed to show that the government withheld either exculpatory or impeachment evidence.

4. Likewise, there is no credible evidence to support Petitioner's claim that Special Agent Britton Boyd and Special Agent Errin Jewell perjured themselves at trial. These issues were fairly and comprehensively presented to the jury and they made their credibility finding implicit in the verdict.

5. Further, although the Court has allowed Petitioner to argue claims 17 through 19, and denies them on their merits, they are also not timely, as Petitioner's new claims of perjury and discovery violation do not relate back to the claims in Petitioner's initial petition.

6. Petitioner's habeas petition under 28 U.S.C. Section 2255, consisting of claims 1-19, is denied.

IT IS SO ORDERED

DATED this 2nd day of April, 2018.

*Ronald B. Leighton*
Ronald B. Leighton
United States District Judge